**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Isbel Marjory Gonzalez Medina,** | ) | **CASE NO. 1:26 CV 1483** |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| **vs.** | ) | |
| **Acting Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement, et al.** | ) | **Memorandum Opinion and Order** |
| **Respondents.** | ) | |

## INTRODUCTION

This matter is before the Court upon petitioner Isbel Marjory Gonzalez Medina's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner seeks review of her detention by Immigration and Customs Enforcement during her removal proceedings. For the reasons that follow, the Petition for Writ of Habeas Corpus is GRANTED.

## BACKGROUND

Petitioner Isbel Marjory Gonzalez Medina ("Petitioner") is a native of Venezuela. Petitioner entered the United States on August 19, 2023, after she received an appointment at the Paso Del Norte Port of Entry in El Paso, Texas through the CBP-1 application. The United States charged Petitioner as someone who was not in possession of proper entry documents at the time of her application for admission and issued her a Notice to Appear. On that same day, Petitioner was

paroled into the United States pursuant to 8 U.S.C. § 1182(d). Petitioner subsequently filed a Form I-589 application for asylum and withholding of removal.

On March 30, 2026, Respondents issued an arrest warrant for Petitioner and apprehended and detained her. Petitioner has been detained since then.

On April 13, 2026, Petitioner filed a Bond Redetermination Request. A hearing was held on April 28, 2026, where the Cleveland Immigration Court ("Immigration Court") found that it lacked jurisdiction to set a bond.

On May 27, 2026, Petitioner filed a new Bond Redetermination Request. A hearing was held on June 2, 2026, and the Immigration Court again found that it lacked jurisdiction to set a bond. Alternatively, the Immigration Court found that the Petitioner is a danger to the community. (Doc. 1-4.)

Thereafter, Petitioner filed the instant Petition for a Writ of Habeas Corpus ("Petition"). Respondents filed a Return of Writ, which moved to dismiss the Petition.

**DISCUSSION**

Petitioner seeks a writ of habeas corpus, arguing that her present detention violates (1) the Immigration and Nationality Act ("INA"), and (2) the Fifth Amendment. Respondents contend the Petition should be dismissed because Petitioner is properly detained under 8 U.S.C. § 1225(b)(2), which mandates her detention and does not afford her a bond hearing and, in the alternative, this Court lacks jurisdiction to second guess the Immigration Court's determination that she is a danger to the community.[1] The Court will address each issue in turn.

---

[1] Respondents also contend that the Petition should be dismissed because Petitioner did not exhaust available administrative remedies. Petitioner did not timely appeal the Immigration Court's decision

**A. Petitioner Is Not Subject to Detention Under 8 U.S.C. § 1225(b)(2)**

This case concerns the applicability of the detention provisions at 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2). Respondents insist that Petitioner is subject to mandatory detention under Section 1225(b)(2), while Petitioner contends her detention is subject to Section 1226(a), which allows for discretionary release on bond.

Section 1225(a)(1) defines an "applicant for admission" to the United States as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." Section 1225(b)(2)(A) then provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." In other words, to trigger mandatory detention under Section 1225(b)(2)(A), three things must be true: the alien must be: (1) "an applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *Kashranov v. Jamison*, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025).

Comparatively, Section 1226 applies to noncitizens "arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen detained under Section 1226 on bond or conditional parole, with the exception of noncitizens who "fall[ ] into one of several enumerated categories involving criminal offenses

---

to the BIA but argues that requiring Petitioner to wait for the conclusion of that appeal before seeking habeas relief would be futile. This Court agrees with Petitioner. For the reasons articulated in its other memorandum opinions addressing similar habeas petitioners, this Court concludes that prudential exhaustion is not required here. *E.g.*, *Lopez v. Noem*, 2026 WL 395202, at *5–6 (N.D. Ohio Feb. 12, 2026).

and terrorist activities." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); 8 U.S.C. §§ 1226(a)(2)(A)–(B), (c).

Separately, Section 1182(d) allows the Secretary of Homeland Security, in his discretion, to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." But this parole "shall not be regarded as an admission of the alien[.]" *Id.* Further, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]" *Id.* "Thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see also Jennings*, 583 U.S. at 287–88 (explaining how persons subject to detention under Section 1225(b) may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit" pursuant to Section 1182(d)(5)(A)).

When Petitioner presented herself on August 19, 2023, at the Paso Del Norte Port of Entry in El Paso, Texas and was charged with not possessing valid entry and travel documents, she was taken into custody by the Department of Homeland Security ("DHS"). Although she was subject to detention pursuant to Section 1225(b)(1),[2] she was paroled into the United States pursuant to Section 1182(d).

---

[2] Section 1225(b)(1) first prescribes that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . and the alien indicates either an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B)." Section 1225(b)(1)(B)(ii) then provides that, "[i]f the officer determines at the time of the interview [for asylum] that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum."

According to Respondents, after her parole ended,[3] Petitioner was properly returned to the custody from which she was paroled—DHS—and subject to mandatory detention under Section 1225(b)(2). Petitioner counters that her Section 1182(d)(5) parole puts her beyond the scope of Section 1225(b)(2), and she is instead subject to Section 1226's detention procedures, which includes a discretionary bond hearing.

This Court recognizes that district courts are deeply divided on this issue, both within this circuit and across the country.[4] While recognizing the arguments on both sides, this Court's own interpretation of the applicable statutory language closer aligns to courts that have determined persons like Petitioner are not subject to detention under Section 1225(b)(2).

"As with any question of statutory interpretation," the Court's analysis starts "with the plain language" of the applicable statutes. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). When Petitioner's parole ended, Section 1182(d)(5) directed that she was to "return or be returned to the

---

Based on the record before this Court, it seems Section 1225(b)(1) applied to Petitioner when she arrived at the port of entry and subsequently applied for asylum.

Accordingly, Section 1225(b)(2) could not have applied to Petitioner at the time of her initial arrival in the United States because Section 1225(b)(2)(B) contains an explicit exception for aliens to whom Section 1225(b)(1) applies.

[3] It is not clear to this Court whether Respondents properly revoked Petitioner's parole, or whether her parole otherwise terminated, before Respondents took her into custody. Petitioner's original parole was afforded on August 19, 2023, for a term of two years. Petitioner does not offer whether her parole was extended beyond August 19, 2025. But Respondents represent that Petitioner's parole was terminated on April 2, 2026, suggesting she was still on parole when Respondents detained her on March 30, 2026. In any event, Petitioner has not raised any issue concerning the lawfulness of any parole revocation and so this issue is not before the Court.

[4] *See, e.g.*, *Castellanos Guerra v. Mullin*, 2026 WL 3027146, at *3–4 (W.D. Ky. Oct. 6, 2026) (discussing split in the Sixth Circuit and split in district courts in circuits across the country).

custody from which [s]he was paroled" and thereafter her case was to "continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

"Custody" is undefined in Section 1182(d)(5). To determine its meaning then, this Court turns to its ordinary definition at the time the statutory language was enacted. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis deleted))). At that time, "custody" was defined as "[t]he care and control of a thing or person . . . . Also the detainer of a man's person by virtue of lawful process or authority," and the definition explained that "[t]he term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." *Custody, Black's Law Dictionary* (6th ed. 1990).

Notably, this definition does not limit "custody" to physical custody. And as other courts have observed, when Congress intends for "custody" to denote detention, "it is preceded by the modifier 'physical,' or 'in.'" *Qasemi v. Francis*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025). Nothing in Section 1182(d)(2)'s command to return to custody itself requires that Petitioner "return to detention." Rather, Section 1182(d)(5) is best read as commanding the unremarkable proposition that when parole ends, the parolee must return to the "care and control" of DHS.

This Court is aware that other courts have taken the ordinary definition of "custody" and conflated it with "status." *E.g.*, *Salazar Ortiz v. Mullin*, 2026 WL 2666248, at *5–6 (E.D. Ky. Sept. 10, 2026) (citing *Flores Diaz v. Mullin*, 2026 WL 1481585, at *3–4 (D.N.M. May 27, 2026)). Without regurgitating the entire analysis, the interpretation essentially relies on several layers of definitions, the text of a regulation, and a constitutional doctrine to go from "custody" to status."

*Flores Diaz*, 2026 WL 1481585, at *3–4. The courts then declare that Section 1182(d)(5)'s direction that parolees return to the custody from which they were paroled is actually a directive that the parolee should revert to their previous status as an "arriving alien" and treated as if they were never paroled at all. It is this line of cases and interpretation that Respondents endorse. (Doc. 6, at 6.)

Respectfully, this Court is not convinced by this interpretation of the applicable statutes. First, most obviously, the actual text of Section 1182(d)(2) makes no mention of the return to a person's previous "status." And while this Court acknowledges that the interpretation finds some superficial support in 8 C.F.R. § 1.2,[5] this Court is tasked with interpreting statutes, not regulations.[6] *See Loper Bright*, 603 U.S. 369, at 412. Treating Petitioner as an "arriving alien" flies in the face of the ordinary meaning of the statutory language. Clearly, Petitioner, who affected her entry at the border three years ago, is not "arriving" now. *Ontiveros v. Warden Corrs. Ctr. of Nw. Ohio*, 2026 WL 1109422, at *3 (N.D. Ohio Apr. 24, 2026).[7] Further, such a reading would render

---

[5] 8 C.F.R. § 1.2 provides that "[a]rriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked."

[6] Even so, this illustrates another flaw in Respondents' reasoning. If Petitioner was subject to the "status" she had at the time of her entry, she would be treated as an "alien who is arriving in the United States" under Section 1225(b)(1)—not Section 1225(b)(2)—because she made a claim for asylum. Even under Respondents' own interpretation of the statutes, Petitioner is not subject to detention under Section 1225(b)(2).

[7] To the extent this reasoning relies on the so-called "entry fiction" in which immigrants are legally considered as if they remained at the border throughout and after their parole, the Court notes that several other courts have found that this doctrine is better understood as a "rule for defining

the rest of Section 1182(d)(5) superfluous, circumventing the cardinal principle of statutory construction that instructs courts to give effect, if possible, to every clause and word of a statute. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "[I]f Congress intended for parolees to retain whatever status they held at the time they were paroled, as the government asserts, it is unclear what significance, if any, this 'any other applicant for admission' language would have." *Ontiveros*, 2026 WL 1109422, at *5. Simply, the plain text of Section 1182(d)(5) treats a parolee like Petitioner not as an "arriving alien" but, instead, as "any other applicant for admission."

As an applicant for admission in DHS's custody, the question is whether Respondents could invoke Section 1225(b)(2) to detain her in March 2026. As the Sixth Circuit recognized in *Lopez-Campos v. Raycraft*, 175 F.4th 713, 721 (6th Cir. 2026), Section 1225(b)(2) applies to an applicant for admission who is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." The Sixth Circuit went on to explain that "for a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer." *Id.* at 723.

When Respondents detained Petitioner on March 30, 2026, they do not contend that she was subjected to inspection and authorization by an immigration officer. And it would not make sense for that to have occurred because it already happened nearly three years prior, when she presented herself at the port of entry and was paroled into the United States. At that time, the immigration

---

the constitutional due process constraints on Congress's treatment of certain immigrants" and not "a rule for interpreting the INA." *Ontiveros*, 2026 WL 1109422, at *5 n.5 (collecting cases).

officer found her inadmissible and placed her into removal proceedings. From there, Petitioner's sought relief from that removal (namely, her pending asylum case) is subject to the review of an immigration judge—not an immigration officer. For this reason, Section 1225(b)(2) is inapplicable to Petitioner. *See Lopez-Campos*, 175 F.4th at 729 ("But for noncitizens like Petitioners who are within the interior, these claims for relief are typically presented before and resolved by an immigration judge, who is expressly not an immigration officer. . . . Section 1225(b)(2)(A) would not apply to noncitizens in this alternative scenario.").

Even further, to be "seeking" admission, the Sixth Circuit has explained that the noncitizen would need to "engage in some affirmative act or attempt towards 'admission'" to fall within the scope of Section 1225(b)(2). *Lopez-Campos*, 175 F.4th at 722–23. Seeking implies action. Respondents do not point to any affirmative action Petitioner took in March 2026 towards admission.[8] At most, Respondent points to Petitioner's 2023 inspection at a port of entry, implicitly conceding that at that time "Petitioner *was* seeking admission to the United States when she used the CBP app to schedule an appointment[.]" (Doc. 6, at 6 (emphasis added).) Absent any affirmative act or attempt towards admission, Petitioner cannot be said to be "seeking admission."

For all the aforementioned reasons, 8 U.S.C. § 1225(b)(2) does not authorize Petitioner's present detention. Rather, as Petitioner claims, her detention is governed by Section 1226.

---

[8] Respondents do not argue that Petitioner's pending asylum case is dispositive here and this Court agrees. *See, e.g.*, *Edahi v. Lewis*, 2025 WL 3466682, at *8 (W.D. Ky. Nov. 27, 2025).

**B. Petitioner's Present Detention Violates Due Process**

Petitioner also alleges that her detention without a bond hearing violates her due process rights under the Fifth Amendment. Respondents contend that (1) Petitioner has no due process right to a bond hearing and, (2) even if she did, Respondents provided two bond hearings.

First, Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States." The plain meaning of the statute is clearly applicable to Petitioner—an alien, who was arrested and detained by Respondents, and is currently pending removal proceedings. Accordingly, Petitioner is entitled to a discretionary bond hearing pursuant to Section 1226(a) and denying her a bond hearing violates due process.[9]

Second, Petitioner acknowledges that she has been given two bond hearings, but contends that both were legally deficient and amount to a violation of due process. At the first bond hearing, the Immigration Court found it lacked jurisdiction to set a bond because Petitioner was detained under Section 1225(b)(2). As explained above, Petitioner is not subject to detention under Section 1225(b)(2). Accordingly, denying Petitioner a bond hearing on this basis was clearly unlawful.

At the second bond hearing, the Immigration Court again found that it lacked jurisdiction and that, in the alternative, Petitioner was a danger to the community. As best this Court can tell from the record before it, the Immigration Court did not provide any reasoning or analysis beyond

---

[9] This is true whether the Court applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) or the standard articulated in dicta in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). "The government's detention of [Petitioner] violates her due process rights regardless of which of the potentially applicable due process standards applies." *Ontiveros*, 2026 WL 1109422, at *7.

noting "[d]anger to the community." (Doc. 1-4.) Respondents submit that no further reasoning is required to satisfy due process.[10] This Court disagrees.

The Immigration Court's bare notation of "danger to the community" make no reference to any of the evidence and no explanation or analysis of the basis of that conclusion. There is no reference to any of the *Guerra* factors[11] and there is no indication as to how the Immigration Court assessed the burden of proof at the hearing. Respondent does not contest the absence of any of these considerations and only contends that "[a]n Immigration Judge has broad discretion in deciding that factors that he or she may consider in custody redeterminations." (Doc. 6, at 9 (citing *Guerra*).)

---

[10] Respondents alternatively contend that this Court lacks jurisdiction to review the Immigration Court's bond determination. Like most of the courts in this circuit that have considered this issue, this Court disagrees. *See, e.g.*, *Martinez Acosta v. Raycraft*, 2026 WL 3136787, at *4 (E.D. Mich. Oct. 20, 2026) (collecting cases). "While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine 'whether an IJ correctly applied the [legal] standard to a given set of facts.'" *Segura v. Serrano v. Scott*, 2026 WL 1674357, at *5 (W.D. Wash. May 26, 2026) (quoting *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024))).

[11] The nine *Guerra* factors, which IJs may weigh to determine whether a noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," include

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 [I. & N.] Dec. 37, 40 (BIA 2006) (citations omitted).

True as this may be, the Immigration Court's failure to provide *any* rationale or explanation for its conclusion was clearly an abuse of that discretion.

It is easy to understand why. The Immigration Court's two-word determination leaves more questions than answers. For example, did the Immigration Court place the burden of proof on Petitioner? If so, this may have violated her due process rights. *See, e.g.*, *Alsyouf v. Bullock*, 2026 WL 2088111, at *3 (W.D. Tenn. July 20, 2026) ("Accordingly, the Court concludes that Petitioner's Fifth Amendment Due Process right was violated when the IJ placed the burden on him in his bond hearing.").[12] Did the Immigration Court base the conclusion on the mere existence of Petitioner's unindicted felony charge? If so, this may violate Petitioner's Due Process rights. *See, e.g.*, *Rosales v. Simon*, 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026) (citation modified) ("[A]n individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases."). And did the Immigration Court consider the evidence that Petitioner purported to offer at the hearing? If not, this might be an abuse of discretion as well. *See, e.g.*, *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) ("The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors. The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.").

---

[12] This Court acknowledges that there is a split among the courts as to which party bears the burden of proof at a Section 1226(a) bond hearing and the Sixth Circuit has not yet provided its guidance. But this Court need not address this issue here and now. It merely notes this issue to illustrate the legal deficiencies of the Immigration Court's bond determination.

By failing to afford Petitioner the legal process due to her through a sufficient discretionary parole determination under Section 1226(a), Respondents have violated Petitioner's due process rights.

**CONCLUSION**

For all the aforementioned reasons, Isbel Marjory Gonzalez Medina's Petition for a Writ of Habeas Corpus is GRANTED. (Doc. 1.) By November 2, 2026, at 5:00 p.m., Respondents shall either release Petitioner from detention or afford her a constitutionally compliant bond hearing pursuant to Section 1226(a).

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 10/27/2026